IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JIMI P. MCDONALD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.  11-cv-762-SCW |
| | ) |
| ROBERT LOVELL and ALAN DALLAS, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

**WILLIAMS, Magistrate Judge:**

### I.   Introduction

Before the Court is a Motion for Summary Judgment (Docs. 43 & 44) filed by Defendants Robert Lovell and Alan Dallas. Defendants argue that they are entitled to summary judgment in this case because they were not deliberately indifferent to Plaintiff's health or safety. Plaintiff has filed a Response (Doc. 52) in opposition to Defendants' motion. Based on the following, the Court **GRANTS** Defendants' motion for summary judgment (Docs. 43 & 44).

### II.   Findings of Fact

The events which form the basis of Plaintiff's Complaint occurred while Plaintiff was housed at Lawrence Correctional Center (Doc. 44 Ex. A at p. 19). When Plaintiff arrived at Lawrence, he received inmate orientation from Defendant Lovell. At the orientation, inmates are told all the rules, all the job assignments, and all the educational programs that are available at the prison (*Id.* at p.20). He testified that they are required to sign forms that acknowledge that they received training, but the inmates do not receive any training and specifically do not receive any caustic training (*Id.* at p. 20). Inmates face disciplinary action if they do not sign the forms (*Id.* at p.21).

Plaintiff testified that he was told he would receive training on dealing with chemicals when he started his job, but he did not receive any training (*Id.*). Plaintiff did state that at orientation, inmates are informed that they will come into contact with chemicals and they have to sign a form so that they can clean their rooms (*Id.* at p. 22). Plaintiff testified that he had no further interactions with Lovell after the orientation (*Id.* at p. 56). He also acknowledged that Lovell did not know Plaintiff would be working in dietary at the time of the orientation (*Id.* at p. 57).

Within two months of Plaintiff arriving at Lawrence, he was hired as a dietary worker (Doc. 44 Ex. A at p. 25). Plaintiff had cooked and worked in several dietaries within the Illinois Department of Corrections and he was originally placed as a line worker at Lawrence but quickly went to work in the main kitchens (*Id.* at pp. 26-27, 29). He did not receive any training when he started working in the kitchen (*Id.* at p. 27). At the time that Plaintiff received his injuries on July 14, 2010, he was working in the kitchen as a cook (*Id.* at p. 28).

Plaintiff testified that when working as a cook, he was sometimes responsible for cleaning the vats that they cook the food in (Doc. 44 Ex. A at p. 29). Plaintiff cleaned vats approximately once per week (*Id.* at p. 32). When preparing to clean, an inmate would fill the vat with water to let it soak and then request cleaning product from the supervisor (*Id.*). The supervisor would provide the inmate with a white bucket with cleaning materials in it and a scrub pad (*Id.*). Mrs. Walker was one of his supervisors at the time of his incident (*Id.* at p. 33). The cleaning agent used in the kitchen at the time was Citral Green, a cleaning chemical the prison had only recently started using (*Id.* at p. 34).

On the day that Plaintiff was injured, he had been cooking in a vat and after he was finished he went to his supervisor for some soap (Doc. 44 Ex. A at p. 36). Plaintiff retrieved a white bucket and the supervisor poured green soap into his bucket and instructed him to put water in the

bucket and clean (*Id.* at pp. 36-37).   Plaintiff could not recall if Mrs. Walker gave him the soap but he knows he spoke with the other supervisor, Mr. Walker, about his injuries (*Id.* at pp. 36-38).   As he was cleaning, the water splashed on his shirt and pants (*Id.* at p. 37).   An hour after cleaning, his skin felt like it was on fire and he informed his supervisor, Mr. Walker, about the problem (*Id.*).   Mr. Walker allowed him to leave.   Plaintiff testified that in the past, the green soap had splashed on him while cleaning and he had developed a rash on his arms, a sunburned type rash, but not like the rash he received on July 14, 2010 (*Id.* at pp. 38-39).   Plaintiff also indicated that they usually had rubber gloves and plastic aprons to protect them when cleaning but the prison no longer had any due to budgetary issues (*Id.* at p. 39).   When cleaning, he usually did get some of the product on him and it was not uncommon to be wet from either hosing down the area or sweat (*Id.* at p. 40).

Plaintiff indicated that his skin felt enflamed and it was on his arms, chest, and legs (*Id.* at p. 42).   He had extreme irritation, and the skin was red and painful (*Id.*).   It was not bad enough, however, that he felt like he needed to go to the hospital.   He asked to take a shower and get some dry clothes (*Id.* at p. 43).   He knew that it was a reaction to the soap because he has had a rash develop before and has seen other inmates in the kitchen get similar rashes (*Id.*).   Mr. Walker gave him permission to leave and he went and took a shower and changed clothes (*Id.* at p. 44).   He also put Vaseline on his body and laid in front of the fan for the rest of the day (*Id.*).

The following day, Plaintiff went back to work.   He was working around the ovens and it was extremely warm (*Id.* at p. 45).   He worked for two to three hours and then saw that his skin was glowing (*Id.*).   His skin was also painful.   Plaintiff tried to finish preparing the meal because he didn't want to leave in the middle of work (*Id.* at p. 46).   However, Plaintiff's skin continued to look red and he saw that it was peeling off like when a person has a bad sunburn (*Id.*).   He also noticed that his shirt was covered in blood as his nipples were irritated and bleeding (*Id.*).   His skin on his legs was

raw (*Id.*).

Plaintiff went to his supervisor and asked to go to the hospital or to see a nurse, but his supervisor informed him that he had to ask permission from the Lieutenant, Defendant Dallas. Plaintiff showed Dallas his shirt and peeling arms and Dallas told him it was not life-threatening, but told him to go take a shower, put on clean clothes, and put in a nurse sick call (Doc. 44 Ex. A at p. 47). Plaintiff spoke for two minutes with Dallas and showed him his skin and bloody shirt (*Id.* at p. 49-50). Plaintiff indicated that his shirt had two baseball size circles of blood from his nipples (*Id.* at p. 50). Plaintiff indicated that he knew the nurse sick call was a six to seven day wait, but he followed Dallas' orders and returned to his unit (*Id.* at p. 47).

Upon returning to his unit, Plaintiff filed a sick call slip (*Id.* at p. 51). Plaintiff saw the nurse on July 21, 2010 (*Id.* at p. 52). Plaintiff showed the nurse his skin and told her that he was still in a bit of pain. She gave him ointment and told him that she thought it was clearing up fine (*Id.* at pp. 52-53). By the time Plaintiff saw the nurse, he indicated that he was not suffering from any symptoms (*Id.* at p. 53). Plaintiff indicated that from the time of his injury to July 21, 2010 when he saw the nurse, his condition continued to improve. He compared his injury to a severe sunburn that hurts but if a person stays dry and clean, it gets better (*Id.* at p. 53). Plaintiff indicated that within that six day period he treated himself was Vaseline and ibuprofen (*Id.* at pp. 53-54). Plaintiff was allowed back to work approximately two weeks after his injury. Plaintiff did not speak to Defendant Dallas after his initial encounter with him (*Id.* at p. 59).

### III.     Conclusions of Law

**A.     Summary Judgment Standard**

Summary Judgment is proper only "if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted)(citing FED.R.CIV.P. 56(a)); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.,* 422 F.3d 603, 607 (7th Cir. 2005). The party seeking summary judgment bears the initial burden of demonstrating - based on the pleadings, affidavits, and/or information obtained via discovery - the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)(quoting FED.R.CIV.P. 56(e)(2)). A fact is material if it is outcome determinative under applicable law. *Anderson*, 477 U.S. 242, 248 (1986); *Ballance v. City of Springfield, Illinois Police Department,* 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "A mere scintilla of evidence in support of the nonmovent's petition is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion." *Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted).

On summary judgment, the Court considers the facts in the light most favorable to the non-movant. *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). The Court adopts reasonable inferences and resolves doubts in the nonmovant's favor. *Id.*; *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir.

2004).  *See also Anderer v. Jones*, 385 F.3d 1043, 1064 (7th Cir. 2004).

B.	Analysis

   1.	*Robert Lovell*

Plaintiff's Complaint alleges that Defendant Lovell was deliberately indifferent to Plaintiff's safety because he failed to properly train him on proper handling of chemicals.  In order to show that Lovell failed to protect Plaintiff in violation of the Eighth Amendment, Plaintiff must satisfy the objective and subjective components applicable to all Eighth Amendment claims. *See McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *Wilson v. Seiter*, 501 U.S. 294, 302 (1991).  He must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendant acted with "deliberate indifference" to that danger.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment.  *See Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992).  The objective analysis examines whether the conditions of confinement "exceeded contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennet*, 17 F.3d 1574, 1579 (7th Cr. 1994).  The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989)(citing *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987)).

Unsafe prison working conditions can constitute an Eighth Amendment violation. *Bagola v. Kindt*, 131 F.3d 632, 646 (7th Cir. 1997).  To be liable, a prison official must have acted with deliberate indifference and must not have taken reasonable steps to prevent the harm. *Id*. The deliberate indifference standard is satisfied if the plaintiff shows that the prison officials acted or failed to act despite the official's knowledge of a substantial risk of serious harm.  *Farmer v. Brennan*, 511

**U.S. 825, 842 (1994).** The test is whether the employee knew the inmate faced a serious danger to his safety and could have easily averted the danger, yet failed to do so. *Case v. Ahitow*, **301 F.3d 605, 607 (7th Cir. 2002).** A plaintiff must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often "by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, **86 F.3d 90, 92 (7th Cir. 1996).**

Here, there is no evidence that Defendant Lovell was deliberately indifferent for not training Plaintiff on handling chemicals prior to his work in the kitchen. Plaintiff testified that Defendant Lovell, as counselor, held an orientation with inmates where he went over various aspects of prison life, including rules, jobs, and educational opportunities. Plaintiff alleges that Lovell made the inmates sign forms indicating that they received caustic training but they actually did not receive training. Plaintiff did testify that Lovell informed the inmates that they would receive training on chemicals if their jobs involved use of chemicals. There is no evidence to suggest that Lovell was in charge of training kitchen workers on chemical use nor is there any evidence that Lovell knew that Plaintiff would come in contact with chemicals in his job assignment. At the prison orientation, Plaintiff did not even know what job he would receive and he had no further contact with Lowell after his orientation. Thus, there is no evidence that Lovell knew of the specific threat to Plaintiff by working with chemicals in the prison.

Further, Plaintiff testified that they were supposed to receive on the job training where they would learn about chemical use, but never received such training. There is no evidence that Lovell was in charge of specific work training. Plaintiff testified that he had numerous supervisors in the kitchen, and named at least four supervisors, and none of them trained him on using chemicals, even though he was told training would be done in the kitchen. Further, Plaintiff indicated that the kitchen workers normally wore aprons and gloves when handling the chemical cleansers but that the

prison no longer stocked the aprons and gloves due to budgetary reasons. There is no evidence that Lovell was in charge of ordering the aprons and gloves which would have prevented Plaintiff from getting the soap on his body. Thus, there is no evidence that Lovell knew that Plaintiff faced a substantial risk of working with chemicals, nor is there evidence that Lovell was in charge of training Plaintiff on working with chemicals. Accordingly, the Court finds that Defendant Lovell is entitled to summary judgment as there is no evidence of his deliberate indifference.

    2.    *Alan Dallas*

Defendant Dallas argues that he is entitled to summary judgment on Plaintiff's deliberate indifference claim because Plaintiff did not suffer from a serious medical need and Defendant Dallas did not know that his skin condition needed immediate treatment. Plaintiff argues that because of Dallas' failure to send him directly to the medical unit, he suffered from pain and discomfort for five days.

The Supreme Court has declared that a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, **429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).** In order to prevail on such a claim, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, **414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).**

While Defendant Dallas argues that Plaintiff's skin rash was not a serious medical need, the Court will assume for the purposes of the motion that a chemical burn causing red, irritated, peeling skin, and bleeding is a serious medical condition. Defendant argues that he did not have the sufficiently culpable state of mind and that he instructed Plaintiff to follow normal procedures for

seeing a nurse and thus did not deny Plaintiff medical care. The second prong of the deliberate indifference analysis requires that a prisoner show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, **429 U.S. at 104 (quoting** *Gregg v. Georgia*, **428 U.S. 153, 173 (1976)).** "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, **780 F.2d 645, 652-53 (7th Cir. 1985).** Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* **at 653;** *Shockley v. Jones*, **823 F.2d 1068, 1072 (7th Cir. 1987).**

Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, **414 F.3d at 653**. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence,... and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, **511 U.S. 825, 842 (1994) (citations omitted).** An inmate does not have to prove that his complaints of pain were "literally ignored," but only that "the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, **546 F.3d 516, 524 (7th Cir. 2008) (quoting** *Sherrod v. Lingle*, **223 F.3d 605, 611 (7th Cir. 2000)).**

The Seventh Circuit has noted that the standard is "a high hurdle..because it requires a 'showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Roasrio v. Brawn*, **670 F.3d 821-22 (7th Cir. 2012) (***Collins v. Seeman*, **462 F.3d 757, 762**

**(7th Cir. 2006)).** "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, **593 F.3d 610, 620 (7th Cir. 2010) (quoting** *Farmer***, 511 U.S. at 843).**

Here, Defendant argues that he was not deliberately indifferent to Plaintiff's skin rash because he did not draw the inference that Plaintiff was suffering from a substantial risk of serious harm. Plaintiff argues that because of Defendant Dallas' failure to take him to the medical unit immediately, Plaintiff suffered additional pain. The Court finds no evidence that Defendant Dallas' actions constituted deliberate indifference. Defendant Dallas only saw Plaintiff for two minutes and, although he saw his raw skin and bleeding, there is no evidence that the injury required emergency intervention. There is no evidence that Plaintiff was bleeding profusely or showed any other symptoms that would require immediate attention. Plaintiff acknowledged that he had received rashes in the dietary before that did not require medical treatment. Defendant Dallas' response to change clothes and put in a sick call appears to be a reasonable response given Plaintiff's stated condition. Further, there is no evidence that Defendant knew that Plaintiff would not be able to see a nurse for six days. Although Plaintiff indicates that he knew that a nurse sick call had a five to six day wait period, there is no evidence that he informed Defendant Dallas of this wait or that Dallas knew that Plaintiff would have to wait for treatment. Thus, there is no evidence that Defendant Dallas' response to put in a sick call was deliberately indifferent as there is no evidence he knew that treatment would be significantly delayed.

Further, the delay in Plaintiff's treatment did not cause him any further harm. While a delay in treatment of a painful, but not life-threatening, condition can support a deliberate indifference claim, the Seventh Circuit has stated that "[i]n cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying

medical evidence' that the delay…caused some degree of harm." *Jackson v. Pollion*, **733 F.3d 786, 790 (7th Cir. 2013);** *see also Grieveson v. Anderson*, **538 F.3d 763, 779 (7th Cir. 2008).** A plaintiff must show "that the delay was detrimental." *Jackson*, **733 F.3d at 790**. Here, there is no evidence that Plaintiff's short delay in receiving treatment caused him any further harm or was detrimental to his condition. Plaintiff indicated that for the six days prior to seeing the nurse he took ibuprofen, coated his skin in Vaseline, and kept his body dry. Further, he was not required to go to work but could stay in his cell under a fan. During the six days he waited to be seen by a nurse, Plaintiff testified that his rash improved. He indicated that the rash was like a sunburn and while it starts off hurting, it gets better if one stays dry and clean. Plaintiff testified that he self-treated and that by the time Plaintiff saw the nurse on July 21, 2010, Plaintiff had no further symptoms. While the nurse provided him with ointment, she informed him that the rash was healing. There is no evidence in the record to suggest that seeing the nurse sooner would have made his situation better or that waiting made his condition worse or caused him additional pain. Plaintiff acknowledged that, like a sunburn, the rash would continue to get better and did, in fact, get better in the six days prior to seeking a nurse. Thus, the Court finds that Plaintiff has failed to offer any evidence that the short delay in treatment caused any detriment to his condition and Defendant Dallas is, accordingly, entitled to summary judgment on Plaintiff's deliberate indifference claim. *See Jackson*, **733 F.3d at 790 (no evidence that three week interruption of medicine was likely to cause serious harm).**

### IV.   Conclusion

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment (Doc. 43 & 44) and **GRANTS** summary judgment in favor of Defendants Lovell and Dallas. As no further

claims remain in the case, the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED**.
DATED: February 7, 2014.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge